[Crim. No. 18884. Second Dist., Div. Two. June 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DON CIPRIANI, Defendant and Appellant.

**COUNSEL**

Hatch, Parent & Abbott, Gerald B. Parent and Thomas F. Stone for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and William R. Pounders, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**COMPTON, J.**—Defendant was convicted in a jury trial in the Superior Court of Santa Barbara County[1] of three misdemeanors, to wit, violation of section 405 of the Penal Code (participating in a riot); violation of section 409 of the Penal Code (failure to disperse from place of a riot, rout, or unlawful assembly); and violation of section 416 of the Penal Code (persons unlawfully assembled failing to disperse on lawful command). Sentences on all charges were ordered to be served concurrently. ▮ Defendant appeals on the single ground that the evidence was insufficient to support the verdict and judgment against him.

▮ "This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v.

---

[1] Jurisdiction was in the superior court because of the joinder of additional felony charges. These additional charges were ultimately dismissed for various reasons not germane to this appeal.

*Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].) ■ If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Love,* 53 Cal. 2d 843, 850-851 [3 Cal.Rptr. 665, 350 P.2d 705].) ■ The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. (*People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382].)

■ "Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].)" (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

Section 405 of the Penal Code reads in pertinent part, "Every person who participates in any riot is punishable by a fine . . . or by imprisonment . . . or by both such fine or imprisonment." The term "riot" is defined by section 404 to mean, "Any use of force or violence, disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law. . . ."

■ It has been established that "It [is] not necessary that a previous agreement between the aggressors should have been alleged, or have existed, to bring such offenses within the inhibitions of section 404." (*People* v. *Bundte,* 87 Cal.App.2d 735, 743 [197 P.2d 823].) Thus, it is the *concurrence* of unlawful action by individuals in the use, or threat to unlawfully use force or violence that constitutes the offense of riot. (*People* v. *Bundte, supra,* at p. 744.) All persons who encourage, incite, promote, give support to or countenance a riot are principals in a riot. (*People* v. *Bundte, supra,* at p. 746.)

Section 409 of the Penal Code proscribes, with certain inapplicable exceptions, the presence at the place of any riot, rout, or unlawful assembly of persons who have been lawfully warned to disperse.

Section 416 of the Penal Code similarly proscribes refusal to disperse by persons who have assembled for the purpose of committing any unlawful act or disturbing the peace.

Viewed in the light most favorable to the judgment, the evidence dis-

closed that on both the 26th and 27th of February 1970, a state of emergency had been proclaimed in and around the Isla Vista area of Santa Barbara County near the campus of the University of California. Persons in the area were advised by way of loudspeaker announcements that the area would be cordoned off and that any person loitering in the area, or participating in any meeting, assembly, or parade of more than three persons upon the public streets, sidewalks, or public property would be immediately arrested.

On those dates large crowds of people in the Isla Vista area were engaged in various illegal activities, which activities included the throwing of rocks at National Guardsmen and other law enforcement officers while those officers were attempting to clear the streets. Numerous officers and guardsmen were seriously injured as a direct result of such incidents.

A branch of the Bank of America had been burned down and other buildings had been damaged. Automobiles had been set afire.

The Isla Vista area was cordoned off by the Highway Patrol sometime around dusk on February 27, 1970. No persons except police officers or public officials were allowed to enter or leave the area until the next morning. Between the hours of 4:45 p.m. and 5:30 p.m. eight to ten loud speaker announcements were made from a police helicopter throughout the Isla Vista area. The announcements were to the effect that a 6 p.m. to 6 a.m. curfew was in effect.

Between 7 p.m. and midnight approximately 10 dispersal announcements were similarly made from the helicopter over areas where crowds had gathered. The officer who gave dispersal orders testified that the order given said: "This is Captin Joel Honey, a Deputy for the Sheriff of Santa Barbara, a Peace Officer for the State of California. I do hereby declare this an unlawful assembly and I order you to disperse in the name of the People of the State. Failure to do so will result in your immediate arrest."

Officer Robert Prince of the Santa Barbara Sheriff's Department testified that while patrolling the Isla Vista area in an unmarked car on the evening of February 27 he was able to clearly hear the dispersal order given at least five or six times.

The occupant of an apartment in front of which defendant was observed testified that throughout the evening she had heard the dispersal orders from the inside of her apartment.

Defendant admitted having heard the helicopter "flying all over the place," and further admitted knowing that the curfew was in effect.

Sometime between 9 p.m. and 9:30 p.m. that evening a National Guard unit consisting of 12 to 14 men made a "sweep" west down Camino Pescadero toward the intersection of Camino Pescadero and Sabado Tarde. The purpose of the "sweep" was to clear the area of all persons violating the orders of dispersal. Members of the National Guard unit testified that as the unit proceeded toward the intersection, persons in the surrounding crowds threw rocks at the guardsmen. After the rocks had been thrown, the crowds dispersed into nearby apartments and up and down the streets. As the guardsmen moved down Camino Pescadero the crowds reassembled behind them and continued to throw rocks at the rear of the unit.

As the unit approached the intersection and while it was under attack from the rear it was met by a crowd which was estimated to contain as many as 30 persons. One of the guardsmen identified defendant as standing at the intersection in a group of approximately 10 people. As the guard unit continued through the intersection, rocks were thrown from the area in which defendant was standing. Two guardsmen identified defendants as one of the persons throwing the rocks. Defendant after throwing two rocks retreated behind a bush from where he threw a third rock. After the unit had passed through the intersection, a guardsman started after defendant who attempted to flee up a driveway where he was apprehended and arrested.

■ There was substantial evidence to support the conclusion that a riot was in progress at the time of defendant's arrest and that defendant was a participant therein.

The clear inference to be drawn from the facts is that a large number of persons were acting together to use force or violence to disturb the public peace throughout the area of Isla Vista and defendant promoted and gave support to the riot by his overt participation.

The panoply of statutes and ordinances in this state which address themselves to the general subject of unlawful assemblies and mass breaches of the peace represents a legislative attempt to deal with the phenomenon of mob psychology and mob violence and at the same time preserve the right of people to assemble peacefully.

The authority given to peace officers and other officials to enforce curfews and order dispersal of assemblages is a recognition of the danger inherent in the combined violence of a large group of people.

Defendant argues that a riot is not created merely because isolated acts of violence occur within a given geographical area and that section 404 of the Penal Code clearly requires that two or more persons *act together pursuant to a common plan or purpose*. Thus he contends that since defendant was

the only one of the group of 10 or so persons who was seen to throw a rock, no riot was occurring at the intersection in question.

This argument misconceives the law and ignores the clear evidence that others in the general area were engaged at that time in similar violent conduct. Some of these other persons so engaged were but a few feet behind the line of guardsmen.

The law prohibiting riots is not premised on the theory of conspiracy. It is based upon the need to prevent the combined effect of concurring violent *acts* of individuals.

Once a violent riot had erupted, as was the case in Isla Vista, a fact of which the defendant was well aware, the momentary inaction of persons standing nearby could provide defendant with no defense to his overt participation.

The concurrence of defendant's actions with the actions of other persons who were participating in a generalized riot in the compact and isolated Isla Vista area, as well as defendant's knowledge of that concurrence, was clearly inferable from the totality of the circumstances.

Defendant next complains that there is no evidence that an order of dispersal was given at the intersection of Sabado Tarde and Camino Pescadero to the particular group assembled there immediately prior to defendant's arrest. Consequently, he argues, his conviction for failure to disperse cannot stand. This is another effort on his part to isolate this single intersection from the general picture of the events.

The invocation of Penal Code sections 409 and 416 must be conditioned upon a lawful order of dispersal.

Section 409 requires that such order be made pursuant to section 726 of the Penal Code.

Section 416 requires only that the order be given by a public officer.

Section 726 provides as follows: "Where any number of persons, whether armed or not, are unlawfully riotously assembled, the sheriff of the county and his deputies, the officials governing the town or city, or the judges of the justice courts and constables thereof, or any of them, must go among the persons assembled, or as near to them as possible, and command them, in the name of the people of the state, immediately to disperse."

Thus, the statute does not specify that the dispersal order be given from any particular location or in any particular manner. It requires only "going among the people assembled" or "as near to them as possible."

The ultimate question is whether the order was given in such a way as to reasonably assure that the persons involved heard the command to disperse and were made aware of the order. The record is clear that such a procedure was followed in Isla Vista on the date in question. The existence of the curfew and of the road blocks preventing ingress to the area supports the inference that defendant was in the area at the time of the announcements. Other evidence supports the inference that he heard and knew of the dispersal order and the curfew.

Section 726 of the Penal Code has remained virtually unamended since its enactment in 1872, a year considerably prior to the invention of helicopters and modern amplification devices.

It seems obvious however that the use of such devices is not foreclosed by anything to be found in the statutes and in fact their use promises more effective compliance with the spirit of the law than does the unamplified voice of an individual speaking at or near an assemblage of persons.

■ Whether a particular defendant was a member of an unlawful assembly to which a dispersal order was addressed and whether his actions constituted a wilfull failure to comply are simply questions of fact. The location of and the means used to give the order are matters for the consideration of the trier of fact.

■ A change of location or a splitting up of members of an unlawful assembly into smaller groups are factors to be considered by the trier of fact in determining whether an order of dispersal was complied with. They do not necessarily establish "dispersal" as a matter of law. Defendant makes no contention that he complied with the order. His argument is simply that the order was not applicable to him.

■ The evidence was sufficient to support the conclusion that defendant, by his presence in the group at the intersection and by his actions, violated the lawful order to disperse.

■ Although defendant has not raised the issue, we feel compelled to consider the application of section 654 of the Penal Code to the case at bar.

Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

■ If a single act or an indivisible course of conduct is charged as the basis for conviction, defendant can be punished only once although he may have violated more than one statute. (*Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206].)

Whether a transaction is divisable and punishable under more than one statute must be decided on the facts of each case. (*People* v. *Camodeca*, 52 Cal.2d 142 [338 P.2d 903].)

If a course of criminal conduct results in the commission of more than one offense, each of which can be committed without committing the other, the applicability of this section will depend on whether a separate act can be established as the basis of each conviction. (*People* v. *Houghton*, 212 Cal.App.2d 864 [28 Cal.Rptr. 351].)

Whether a course of criminal conduct is divisible, giving rise to separately punishable crimes depends on the intent and objective of the actor. (*People* v. *Chapman*, 261 Cal.App.2d 149 [67 Cal.Rptr. 601].)

Defendant was convicted of violating section 409 of the Penal Code which condemns remaining at the place of a riot or an unlawful assembly after a lawful warning to disperse has been issued. There is no requirement that defendant actually participate in the riot or unlawful assembly in order for him to be guilty of violating this section. (*People* v. *Anderson*, 117 Cal.App.Supp. 763, 769 [1 P.2d 64].)

Defendant was also found guilty of violating section 416 of the Penal Code which section condemns the failure of persons who have assembled unlawfully to disperse upon order of a public official.

It is apparent that under either section the punishable conduct is the *failure to disperse.*

In the case at bar there was but *one failure of the defendant to disperse* hence his conduct while it may have violated both sections could be punished only once.

This then brings us to the critical question whether the conduct of defendant can subject him to punishment for participation in a riot and also subject him to punishment for a failure to disperse under section 409 or section 416 of the Penal Code. The plain objective of section 409 is to enable law enforcement officers to de-fuse riotous situations by ordering persons to remove themselves from the area without any need to distinguish between the rioters and bystanders whose very presence aggravates the problem of restoring tranquility. Thus defendant's presence at the intersection under the circumstances and without any additional action on his part constituted a violation of section 409 of the Penal Code.

The jury here found, and the evidence supports the finding, that defendant was a person who along with others assembled for the purpose of disturbing the public peace or committing an unlawful act and his failure to disperse also constituted a violation of section 416 of the Penal Code. This violation occurred prior to his confrontation with the National Guard even though the evidence of his conduct at the time of the confrontation provides the necessary inference of his prior intention.

Thus, when defendant assaulted the National Guardsmen and joined in the riot he embarked on a course of conduct which was clearly separate and divisible from his prior failure to heed the order of dispersal. It follows that he may be punished for violating either section 409 or section 416 of the Penal Code as well as for violating section 405 of the Penal Code.

It appears to us that a violation of section 416 of the Penal Code is a more serious crime than a violation of section 409. Since defendant may not be punished for violating both sections, the sentence on the latter must be set aside.

The sentence on count V of the information for violation of section 409 of the Penal Code is vacated. In all other respects the judgment is affirmed.

Herndon, Acting P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 2, 1971. Peters, J., was of the opinion that the petition should be granted.