[Crim. No. 38719. Second Dist., Div. One. May 13, 1981.]

In re JOHN WAGNER on Habeas Corpus.

[Crim. No. 38720. Second Dist., Div. One. May 13, 1981.]

In re WILLIAM REID PARKER on Habeas Corpus.

[Crim. No. 38721. Second Dist., Div. One. May 13, 1981.]

In re JAMES T. FAUSS on Habeas Corpus.

**COUNSEL**

David M. Weitzman for Petitioners.

Michael D. Bradbury, District Attorney, and Charles R. Roberts, Deputy District Attorney, for Respondent.

## OPINION

**DALSIMER, J.*—**After a jury trial in the municipal court, the three petitioners herein were convicted of unlawful assembly (Pen. Code, § 407) and failure to disperse (Pen. Code, §§ 409, 416). Petitioner Parker was convicted also of rout (Pen. Code, § 406) and inciting a riot (Pen. Code, § 404.6). The petitioners appealed their convictions to the Appellate Department of the Superior Court of Ventura County. Their convictions were affirmed by that court without opinion and certification to this court was denied. Petitioners each petitioned for writs of habeas corpus alleging various deprivations of constitutional guarantees. We issued an order to show cause and ordered that the cases be consolidated for all purposes in this court. We subsequently ordered that all exhibits be transmitted to this court and lodged herein. The Ventura County Municipal Court has also provided us, at our request, with certified copies of the docket in each case.

### FACTS

In late July 1978 the Ku Klux Klan (hereinafter KKK) obtained the permission of the City of Oxnard to use the Oxnard Community Center for the purpose of showing a movie, "The Birth of a Nation." This activity was scheduled to take place on July 30, 1978. Almost simultaneously the Committee Against Racism (hereinafter CAR) obtained permission from the City of Oxnard to conduct a demonstration on Hobson Way, a street adjacent to the community center.

Although it is not clear exactly when the CAR demonstration began assembling, it was about 1:30 p.m. when some 30 to 35 KKK members arrived at the entrance to the main auditorium of the community center. As the KKK members marched through the main entrance doors into a patio area, many of the CAR demonstration members launched an attack on the KKK members. At this point, police intervened, the two groups were forcibly separated, and the KKK entered the auditorium. The demonstrators within the patio area then attacked officers of the Oxnard Police Department, using various weapons such as dirt-clods, sticks, unopened soda-pop cans, and steel pipes wrapped in newspaper. The windows on either side of the doors were broken by the demonstrators, using steel pipes, unopened soda cans, and their feet.

---

*Assigned by the Chairperson of the Judicial Council.

Thereafter a general melee erupted inside and outside of the patio area. Many demonstrators entered the patio area and engaged in hand-to-hand fighting with officers. Other rioters threw various objects such as described above from the outside. The group was heard to chant: "Death to the Klan; kill the Klan; kill the Klan and the Klan cops; we have done it before; we will do it again." Petitioners, Fauss, Parker, and Wagner, were present as part of the group of demonstrators outside of the patio during all of this time. The officers would have made arrests and declared an unlawful assembly at this time, but they were outnumbered 150-200 to 9.

At about 1:45 p.m. the demonstrators, in two separate groups, repaired to the south portion of the community center where they rejoined and marched back and forth in a seemingly peaceful demonstration. At approximately 3:15 p.m. the group entered the south parking lot of the community center and about 3:21 p.m. they suddenly stopped and then began throwing rocks, unopened soda-pop cans, and steel pipes at the windows of the community center where a flag bearing a KKK symbol had been displayed. All three petitioners were present during the renewed violence. At the conclusion of this display the crowd resumed marching and gathered in a nearby alleyway and at 3:39 p.m. burned an effigy of a Klansman.

At 3:42 p.m. an Oxnard police officer using a public address system declared the assemblage to be unlawful and ordered them to disperse. He stated the order on six occasions, three times in English and three times in Spanish. A witness located at a place where the demonstrators were between him and the loud speaker testified that he heard the order. After the dispersal order, a member of the demonstrators said over a bullhorn, "You racist scum, you can't make us get out of here. We're the people of the State of California, not you. We're out here together in force and you can't make us leave." The crowd cheered the person with the bullhorn. All petitioners were present during the dispersal order and were observed to be cheering the response by the man with the bullhorn. The police helicopter was not in the area during the dispersal order. The dispersal order went unheeded by the demonstrators, who resumed marching on 9th Street, which is located on the south side of the community center.

At 4 p.m. a group of fifty police officers and sheriff deputies formed a line, three officers deep, and advanced toward the demonstrators, who

pelted the officers with sticks, boards, rocks, chunks of concrete, and other objects.

Petitioner Wagner was arrested because he had failed to disperse and was carrying sticks of a type which had previously been thrown at police. Petitioner Parker was observed throwing chunks of concrete at the officers, who by now were pursuing the demonstrators. He was thereupon arrested. Petitioner Fauss was arrested because he had failed to disperse and was carrying a bullhorn.

During the afternoon, most of the events were recorded on video tape by police and also by employees of a commercial television company who were stationed on the roof of the community center. Two reels of video tape were introduced into evidence and played for the jury. Over 100 still photos were also taken and received into evidence.

### PETITIONERS' CONTENTIONS

1. Petitioners were denied due process in that erroneous jury instructions were given and the instructions defined constitutionally protected conduct as a basis for a guilty verdict.

2. Prosecutorial misconduct violated petitioners' rights to a fair trial.

3. At the time of the hearing on appeal, the trial court judge had become a judge of the superior court and a member of the appellate department thereof, and even though he recused himself, his membership on the court denied petitioners due process of law.

4. Petitioners were convicted for conducting constitutionally protected activities.

5. Petitioners were denied due process by the trial court's order which forbade counsel to use the phrases "free speech" and "free assembly" during oral argument to the jury.

6. Petitioner Parker makes the additional contention that section 406 of the Penal Code is void for vagueness and thus said petitioner's conviction thereof is constitutionally defective.

## DISCUSSION

■ At the threshold of our dealing with the contentions raised by the petitioners we bear in mind that the scope of review under postconviction habeas corpus is not without limit. Although habeas corpus may be employed to set aside a conviction which was obtained by the denial or impairment of fundamental constitutional rights, it may not ordinarily be used to obtain a second appeal. (See *In re Terry* (1971) 4 Cal.3d 911, 927 [95 Cal.Rptr. 31, 484 P.2d 1375].) The contentions of petitioners are replete with examples of trivialities being elevated to constitutional proportions. It is patent that not every error occurring during the trial which has been passed upon by an appellate court or could have been passed upon by an appellate court rises to constitutional proportions. Thus, not every incorrect ruling upon the admissibility of evidence nor every misdirection of the jury becomes ipso facto of constitutional dimensions. Due process of law requires a fair trial. (*Nebraska Press Assn.* v. *Stuart* (1975) 427 U.S. 539 [49 L.Ed.2d 683, 96 S.Ct. 2791].) This court is unaware of any authority which holds that due process requires a perfect trial.

I

■ Petitioners' contention that their conviction of violating Penal Code section 407 was unconstitutional in that the petitioners' acts and words were constitutionally protected is untenable. In essence petitioners seek to transform their contention of insufficient evidence to support a conviction into a constitutional issue. This court has carefully reviewed the transcript of the proceedings during the trial, including the argument of counsel and the court's instruction of the jury. Further, we have ordered the exhibits which were introduced into evidence at the trial to be lodged with this court and we have reviewed all such exhibits including the video tapes which were played during the trial.

"[T]he principle is well established that habeas corpus will not lie to review procedural irregularities, errors in law, or insufficiency of the evidence, where the lower court acted within its jurisdiction." (Witkin, Cal. Criminal Procedure, Habeas Corpus and Other Extraordinary Writs, § 799, p. 772.) Our Supreme Court stated this principle as follows: "Even if petitioner's cause were presently before us on appeal from the judgments of conviction, the trial court's factual determinations, on such a record, would be conclusive. Under our system of law the weight of the evidence is primarily for the jury; it then may be re-

viewed by the trial judge and a new trial granted if in his discretion it appears that the weight of the evidence, despite substantial conflict, does not sustain the jury's finding. But on appeal, if there be substantial conflict, the determinations of jury and trial judge must be accepted as final [citations] and on habeas corpus, wherein the attack is collateral, the sphere of inquiry and bases of action are still more limited [citations]." (*In re Horowitz* (1949) 33 Cal.2d 534, 546 [203 P.2d 513].)

Petitioners misconstrue the law as stated in *In re Brown* (1973) 9 Cal.3d 612 [108 Cal.Rptr. 465, 510 P.2d 1017], cert. den. 416 U.S. 950 [40 L.Ed.2d 300, 94 S.Ct. 1959]. In granting petitions for writs of habeas corpus in *Brown* the court did not purport to rule on insufficiency of the evidence. Rather, the court ruled that the instructions to the jury concerning Penal Code section 407 had the effect of characterizing as unlawful conduct which has been construed by the United States Supreme Court to come within the guarantees of the First Amendment of the United States Constitution. While it is true that the court, at page 623 of its opinion, stated that the evidence was insufficient for conviction, it went on to state: "there is *no evidence* that petitioners engaged in acts which were by themselves violent or which posed clear and present danger of violence." (Italics added.) Earlier in that same opinion, the court pointed out that approximately 1,000 persons were assembled on the occasion there in question. In *Brown, supra*, at page 615, the court pointed out: "However, despite these activities [chanting, shouting, and picket sign waving] and the large number of people in attendance, the mass meeting was generally orderly." The court made the point more than once that there was a *total absence of evidence that would justify the conviction of the petitioners in that case*. Such is not true in our case.

Petitioners further contend that in order for a person to be guilty of an unlawful assembly, it must be shown that such person actually committed acts which were violent or which posed a clear and present danger of violence. We cannot agree. The statutory denunciation pertains to the assembly at large. (71 A.L.R. 2d 875.) Not every member of the assembly must individually commit unlawful acts to render the assembly unlawful. (Cf. *People* v. *Cipriani* (1971) 18 Cal.App. 3d 299 [95 Cal.Rptr. 722]; *People* v. *Montoya* (1936) 17 Cal.App.2d 547 [62 P.2d 383].) If a person is a participant in a lawful assembly which becomes unlawful, he has an immediate duty upon learning of the unlawful conduct to disassociate himself from the group. Petitioners argue that such a construction of unlawful assembly would render an innocent member of a large assembly guilty of a crime merely by his at-

tendance at the meeting. If a fight breaks out at a sporting event, they reason, everyone would be required to leave or risk being arrested for unlawful assembly. Such a strained construction ignores reality. Almost never could an entire audience be deemed to be encompassed in an assembly doing an unlawful act.

The extent of the group and the membership therein are merely questions of fact. (Cf. *People* v. *Cipriani, supra*, 18 Cal.App.3d 299, 308.) Penal Code section 408 provides, "Every person who participates in any rout or unlawful assembly is guilty of a misdemeanor."

Webster's Third New International Dictionary (1966) page 1646 defines participate as follows: "... to take part ...." A person takes part in an unlawful assembly by knowingly joining or remaining with the group after it has become unlawful. The trial court instructed the jury that the participation must be done knowingly. Whether or not a person acted knowingly is also merely a question of fact.

If it were necessary that each member of an unlawful assembly commit an unlawful act before that member could be convicted, then there would be no necessity to make participation in the unlawful assembly a crime. The independent unlawful act would itself be grounds for prosecution.

It is apparent from the evidence that the jury was justified in finding that each of the petitioners herein was present and was aware of the unlawful acts being committed by many other members of the assembly. It is uncontested that rather than abandoning the demonstration, petitioners remained until their respective arrests.

Additionally, it should be noted, the jury was fully and correctly instructed on the concept of aiding and abetting. Therefore it may be inferred that, based upon the evidence at the trial, the jury convicted one or all of the defendants on that theory.

## II

■ Petitioners' contention that their convictions for violating Penal Code section 409[1] are unconstitutional because they are based on constitutionally protected conduct is likewise without merit.

---

[1]Penal Code section 409 provides: "Every person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to dis-

Again, in arguing the supposed unconstitutionality of the convictions under section 409, petitioners in reality are attacking the sufficiency of the evidence. We reiterate that there was abundant evidence from which the jury could find: that the scene in question was the place of a riot or of a rout or of an unlawful assembly; that the petitioners, along with the other persons present, had been lawfully warned to disperse; and that the petitioners heard the warning and failed to disperse.

■ Petitioners contend that Penal Code section 726[2] was not complied with by the police because no one went "among the persons assembled or as near to them as possible" to command their dispersal. This contention is based on the fact that the dispersal order was given on a public address system. We dispose of this complaint by quoting from *People* v. *Cipriani, supra,* 18 Cal.App.3d 299.

It was pointed out by the *Cipriani* court that section 726 was enacted long before the invention of modern amplification devices. The court stated on page 308: "It seems obvious however that the use of such devices is not foreclosed by anything to be found in the statutes and in fact their use promises more effective compliance with the spirit of the law than does the unamplified voice of an individual speaking at or near an assemblage of persons. [¶] Whether a particular defendant was a member of an unlawful assembly to which a dispersal order was addressed and whether his actions constituted a wilfull [*sic*] failure to comply are simply questions of fact. The location of and the means used to give the order are matters for the consideration of the trier of fact."

■ Petitioners' complaint of unconstitutional convictions of violation of Penal Code section 416 is also premised upon the allegation that the prosecutor introduced insufficient evidence. Again, it is without merit.

---

perse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor."

[2]Penal Code section 726 provides: "Where any number of persons, whether armed or not, are unlawfully or riotously assembled, the sheriff of the county and his deputies, the officials governing the town or city, or the judges of the justice courts and constables thereof, or any of them, must go among the persons assembled, or as near to them as possible, and command them, in the name of the people of the State, immediately to disperse."

■ Petitioner Parker contends that there was insufficient evidence upon which to support the conviction for violation of sections 406[3] and 404.6[4] of the Penal Code. There was more than abundant evidence upon which a jury could convict Mr. Parker of rout. He was observed by more than one witness to be throwing pieces of concrete or rocks at police officers.

■ So far as Mr. Parker's conviction for violation of section 404.6 is concerned, however, we agree with petitioner. Petitioner contends that there was absolutely no evidence that he intended to cause a riot, that he did any act or engaged in any conduct urging a riot, or that he urged others to commit acts of force or violence. The prosecutor in his return to the order to show cause virtually concedes that fact. Therefore the conviction thereof can not stand. (*In re Brown, supra*, 9 Cal.3d 612.) The prosecutor informs us that the act of petitioner's throwing chunks of concrete at police officers constitutes evidence sufficient to convict petitioner of urging riot. Clearly this is not so.

The municipal court docket reveals that petitioner Parker was sentenced for violation of count I of the complaint, namely, violation of Penal Code section 407. Sentence upon his conviction of the remaining counts, including the conviction for violating section 404.6, was stayed pending completion of the sentence imposed in count I. Therefore, his liberty is not immediately threatened as a result of his conviction of count III. Nevertheless, petitioner Parker's conviction of count III was erroneous.

### III

■ Petitioners contend that the district attorney's trial deputy was guilty of prosecutorial misconduct. Petitioners' characterization of the argument of the prosecutor as being misconduct displays either an abysmal ignorance of what constitutes such conduct or a regrettable attempt

---

[3]Section 406 provides: "Whenever two or more persons, assembled and acting together, make any attempt or advance toward the commission of an act which would be a riot if actually committed, such assembly is a rout."

[4]Section 404.6 provides in pertinent part: "Every person who with the intent to cause a riot does an act or engages in conduct which urges a riot, or urges others to commit acts of force or violence, or the burning or destroying of property, and at a time and place and under circumstances which produce a clear and present and immediate danger of acts of force or violence or the burning or destroying of property, is guilty of a misdemeanor."

to once again elevate each claimed error of law to constitutional proportions. What is here portrayed as prosecutorial misconduct consists merely of a disagreement between the attorney for petitioners on the one hand and the trial judge and the prosecutor on the other concerning what the law requires in communicating to persons assembled the command or desire of a police officer to disperse. The fact that the prosecutor argued in a manner specifically permitted by the court is cited as misconduct. The absurdity of the argument is revealed by its mere statement.

Petitioners' other allegations of prosecutorial misconduct are specious. Our review convinces us of their total lack of merit.

## IV

Petitioners contend that they were denied their constitutional right to a public trial. This claim by petitioners is based upon the fact that a Mr. Bisson was excluded from the trial. As the trial judge had previously ordered that all witnesses be excluded from the court upon petitioners' motion, the spectator in question was so excluded. Counsel for petitioners objected to this exclusion and stated to the court that he did not intend to and would not call Mr. Bisson as a witness. Under the circumstances, we view the exclusion of Mr. Bisson to be error. The fact is, however, that the exclusion of one person from a courtroom does not in our view constitute deprivation of the right to a public trial. The People represent to us, without contravention by petitioners, that the trial was in all respects other than above indicated open to the public, that the public and press attended the trial and that daily accounts of the proceedings were presented in the press. Petitioners cite no authority to substantiate their claim that such exclusion of just one witness from an otherwise open courtroom deprived them of a public trial. In disposing of a similar claim in *Young* v. *State* (Miss. 1977) 352 So.2d 815, 818, the court said: "We hold that exclusion of one person from the courtroom does not violate the right of the defendant for a public trial as guaranteed by . . . the Sixth Amendment to the United States Constitution." The error was, beyond a reasonable doubt, harmless. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

## V

Petitioners' contention that they were denied due process of law because of errors made in the introduction of evidence during the trial

is not well taken. Without determining that an error in the introduction of evidence can never be construed to be of constitutional proportions, we hold that any error which may have taken place in the trial court's ruling on evidence certainly was not of such magnitude.

The assemblage, which was at 3:42 p.m. declared to be unlawful, began approximately three hours earlier and continued without interruption until it was finally forcefully terminated by police action. During that period of time there were at least two sustained outbreaks of violence by persons who were members of the demonstration. It is fundamental that all evidence tending to indicate that petitioners were present during the period of time between the convening and dissolving of such an assemblage would be relevant. Relevant evidence is admissible (Evid. Code, § 351). Likewise, to determine whether indeed the assembly became an unlawful assembly, it is essential that the facts concerning the conduct of the total assembly, rather than just the acts and conduct of the defendants being tried, be displayed to the jury by whatever relevant evidence is available. Petitioners charge that the introduction of such evidence was merely an attempt to convict the petitioners by means of "guilt by association."

As heretofore stated, it is the *participation* in the unlawful assembly which is proscribed by statute, not unlawful acts which are prohibited by other statutes not here involved. Thus the conduct of other persons in the assemblage is relevant. Even if we were to hold that the evidence of the violence which occurred at 1:30 p.m. should have been excluded under Evidence Code section 352, such error would not be cognizable on habeas corpus. Petitioners must demonstrate more than mere legal error. They must establish that the trial court exceeded its jurisdiction in some manner. (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 605 [114 Cal.Rptr. 250, 522 P.2d 1058].)

## VI

Petitioners assert that they were denied their right to an appeal because by the time their appeal was heard by the Appellate Department of the Ventura County Superior Court the trial judge herein had become a member of that court and had been assigned to the appellate department. This contention is not only absurd but moreover tends to attack the integrity of those judges who sat on the appeal. Certainly there is nothing in the record or otherwise that would lend any credence to the charge that sitting judges are unfair or lacking impartiality be-

cause one of their nonsitting colleagues was the trial judge. The making of such a charge with absolutely no evidence or citation of authority whatsoever to support it constitutes reprehensible conduct on the part of counsel for petitioners.

## VII

Petitioners contend that the trial court erroneously instructed the jury in that certain instructions were given which had been objected to and that certain other instructions were refused which should have been given.

(a) ▮ The trial judge gave the following instruction: "If you find beyond a reasonable doubt that the evidence establishs [*sic*] that the defendants or any of them are guilty in fact of the charges as to which you have been instructed, then in regard to any such guilty defendant, there is no violation of that defendant's right to free speech or assembly." Petitioners contend that such instruction erroneously removed from the jury's consideration the question as to whether or not the petitioners were engaging in a peaceful assembly and exercising their right of free speech. We do not agree.

The trial judge had defined and explained for the jury the conduct which constitutes a violation of the sections of the Penal Code charged by the People. In instructing concerning a violation of Penal Code section 407, unlawful assembly, for example, the court was very careful to point out, "Not every meeting where there is a [*sic*] violent, boisterous or tumultuous conduct is an unlawful assembly. To constitute an unlawful assembly, persons must be assembled under such circumstances as to excite terror and alarm in the neighborhood." At another point, the court pointed out to the jury that "[unlawful] assembly of two or more persons assembled to do a lawful act is limited to assemblies which are [in] themselves are [*sic*] violent or which give rise to a clear and present danger of immediate violence."

In giving the instruction objected to, the court was explaining to the jury that the First Amendment to the United States Constitution permitting free speech and peaceful assembly does not condone violence. As stated by Justice Goldberg in *Cox* v. *Louisiana* (1965) 379 U.S. 536, 574 [13 L.Ed.2d 471, 85 S.Ct. 453]: "We reaffirm the repeated holdings of this Court that our constitutional command of free speech and assembly is basic and fundamental and encompasses peace-

ful social protest, so important to the preservation of the freedoms treasured in a democratic society. We also reaffirm the repeated decisions of this Court that there is no place for violence in a democratic society dedicated to liberty under law...." Indeed, if the court's instructions as to the conduct prohibited by each of the sections of the Penal Code upon which the charges in this case were based were correct, as this court believes them to be, then the instruction here complained of is also correct. We so hold.

(b) ■ Petitioners complain of error based upon the refusal of the trial judge to give the instructions requested by petitioner; namely, CALJIC No. 16.260[5] (breach of peace), and CALJIC No. 16.261[6] (breach of peace—definition of terms used). We are not told if, or how, the forms were modified when presented to the court.

In relation to count V (violation of Pen. Code, § 416) the court instructed the jury in part essentially in the words of the statute.[7] The court additionally instructed the jury: "A specific intent to disturb the peace is required. [¶] Disturbing the peace and breach of the peace have the same meaning. Riot, rout and unlawful assembly as I have previously defined for you are breaches of the peace or disturbing the peace. [¶] It is not required that it be shown that all of the foregoing disturbances of the peace or breaches of the peace took place. It is required that it be shown that the defendants' specific intent was to

---

[5]CALJIC No. 16.260 states: "Every person [¶] [who unlawfully [fights] [challenges another person to fight] in a public place] [¶] [who maliciously and willfully disturbs another person by loud and unreasonable noise] [¶] [who in a public place directs at one or more persons offensive words which are inherently likely to provoke an immediate violent reaction], [¶] is guilty of a misdemeanor."

[6]CALJIC No. 16.261 states: "As used in these instructions the following terms have the following meanings: [¶] 1. The term 'loud and unreasonable noise' does not mean all loud shouting or cheering such as at an athletic event or political rally. Nor does it include all loud speech which disturbs others even if intended to do so. What the term does mean is loud shouting and cheering where there is a clear and present danger of its giving rise to immediate violence or where such loud shouting and cheering is not intended as a means of communication to inform or persuade but is used as a guise to disrupt lawful endeavors. [¶] 2. The term 'offensive words' does not mean speech which merely has a tendency to provoke others to violence. What the term does mean is speech which constitutes a clear and present danger of provoking others to immediate violence."

[7]Penal Code section 416 provides: "If two or more persons assemble for the purpose of disturbing the public peace, or committing any unlawful act, and do not disperse on being desired or commanded so to do by a public officer, the persons so offending are severally guilty of a misdemeanor."

disturb the peace and any of the above breaches of the peace would constitute an illegal purpose.

It is interesting to note that the petitioners do not allege that the instructions given were inaccurate or misled the jury. Had the jury been instructed in the words of CALJIC No. 16.260 and CALJIC No. 16.261, it could well have found that the conduct there described had not taken place and still found that the conduct described in the instructions as given did take place. The jury inferentially did make the latter finding because it did convict all petitioners on count I, unlawful assembly. Since the court correctly defined unlawful assembly as a breach of peace, the complaint of petitioners is without merit.

(c) ■■■ Petitioners specifically object to the trial court's refusal to instruct the jury concerning the word "willfully" as contained in CALJIC No. 1.20. The trial court correctly refused such instruction. To do otherwise would have been error. See *People v. Barkoff* (1958) 163 Cal.App.2d 639 [329 P.2d 1005], where in a multiple count trial some of the counts, as here, required a specific intent. The court held it to be error to instruct upon general intent when specific intent crimes are alleged as that would tend to confuse the jury.

(d) ■■■ In regard to some of the instructions which were refused, the petitioners, in contending they had a right to have them given, place great reliance upon *People v. Kane* (1946) 27 Cal.2d 693 [166 P.2d 285]; *People v. Granados* (1957) 49 Cal.2d 490 [319 P.2d. 346]; and *People v. Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847]. This reliance by petitioners is mistaken. The holding of *Granados* and its progeny is succinctly stated by the court in *People v. Sears, supra*, at page 190: "Section 1096a of the Penal Code declares that when the statutory definition of reasonable doubt is given (see Pen. Code, § 1096), no other instruction need be given defining reasonable doubt. Despite this section, a defendant, upon proper request therefor, has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered. [Citation.]" None of the proffered instructions which were refused by the court and which petitioners contend to have been required because of *Granados*, *Kane*, and *Sears, supra*, did in fact refer to specific evidence offered by either party in the case. Rather such instructions merely reemphasize the doctrine of reasonable doubt and restate in an argumentative manner the instructions which were in fact given by the court.

(e) The court further instructed the jury concerning count V as follows: "... the order to disperse needs no particular language whatsoever and may be any form of communication ...." Petitioners complain that this instruction is erroneous in that the language of the statute requires that there be some type of specific oral or written direction or instruction. On the other hand, the district attorney contends that the only requirement is that the desire or command to disperse be communicated to the group in any form recognizable by them. Without resolving that conflict, it is apparent that the jury in this case found that the petitioners heard the oral order to disperse which was communicated over the public address system. The conduct which forms the basis of the charge in count IV is the same conduct that forms the basis for the charge in count V. As the jury was specifically instructed concerning the communication of the oral command in count IV and as all petitioners were convicted of count IV, we must infer that the jury found that the oral command to disperse was given and was heard.

(f) Petitioners contend that the trial judge erroneously refused to give certain other instructions proposed by petitioners. We have examined each of these proposed instructions carefully. It is not necessary to set them forth at length. We find them to be either repetitive or argumentative or in some cases both. The refusal to give such instructions is not error. (*People* v. *Taylor* (1977) 67 Cal.App.3d 403 [136 Cal.Rptr. 640].)

## VIII

 We now address the most troublesome of the attacks made upon their convictions by petitioners. The trial court granted the prosecution's motion to prohibit counsel from using the words "free speech" and "free assembly" during their summations. Counsel were, however, specifically told that they might discuss the elements of free speech and free assembly and that they might argue whether or not there existed a clear and present danger of immediate violence. They were admonished that "the words 'free speech' or 'free assembly' could not be used as being confusing to the jury as being too vague."

We were astonished to learn of this inhibition being placed by the trial court upon argument of counsel. We believe that it was error for the

trial court so to restrict. We nevertheless conclude that said error was not prejudicial.

Many scholars believe that the very cornerstone of the American system of government rests on the rights of free speech and free assembly protected by the First Amendment of the United States Constitution and its counterpart in the California Constitution, article I, sections 2 and 3. It is true that we deal with words of art which must be defined by the court to a jury in order that the jury can correctly understand the limitations which are placed upon the enjoyment of these rights. It is nevertheless difficult to comprehend why counsel should not be permitted to employ such words during their argument of the concepts and the limitations.

In *People* v. *Baldwin* (1954) 42 Cal.2d 858, 871 [270 P.2d 1028], cert. den. 348 U.S. 937 [99 L.Ed. 734, 75 S.Ct. 358], the court stated: "... it was for the judge to decide and instruct the jury as to questions of law; he could refuse counsel permission to argue the law, although counsel had a right to argue facts pertinent to the law. [Citation.]" In *People* v. *Radovich* (1932) 125 Cal.App. 77, 78 [13 P.2d 860], the defense attorney during argument attempted to read from a volume of the California reports. The court instructed counsel not to do so and stated, "the court will attend to all of the law in this case." Defense counsel persisted and expressed a desire to refer to certain other cases. The court at that point described the conduct of counsel as being contemptuous and forbade counsel to address the jury on any subject other than the facts. Although the judgment was affirmed, this statement by the trial judge was criticized by Mr. Witkin in California Criminal Procedure, Trial, section 467, at pages 474-475, thusly: "But this is unsound: Counsel can go beyond the facts..., and must be entitled to make any reference to the law necessary for an understanding of the argument on the facts. [Citations.]" In *People* v. *Reinschreiber* (1956) 141 Cal.App. 2d 688, 702 [297 P.2d 658], a concurring justice opined: "The notion that counsel must refrain from ever mentioning any principle of law in argument is a fetish that is often carried to inordinate lengths."

■ Whether or not the trial court still retains discretion to bar counsel from making any reference whatsoever to the law during argument may perhaps be somewhat questionable at this time. Still, it is beyond question that the trial court has the power and, in fact, the duty to bar counsel from misstating the law. (*People* v. *Sudduth* (1966) 65 Cal.2d 543 [55 Cal.Rptr. 393, 421 P.2d 401], cert. den., 389 U.S. 850 [19 L.Ed.2d 119, 88 S.Ct. 43].)

In our case the court allowed counsel to argue the law, but, in anticipation that counsel would do so inaccurately, he made the challenged order. Syllogistically speaking, it could be argued that if the court has the power to foreclose all discussion of the law, it has the power to limit discussion thereof by interdictions such as those here imposed. On the other hand it seems that there is no rational basis to assume that the terms "free speech" or "free assembly" are such as could conceivably, in the words of the prosecuting attorney, "inflame the passions of the jury." Moreover, we are unable to locate any authority which permits a trial judge to first anticipate and then enjoin the use of any given words in argument as being ipso facto a misstatement of the law. This is not to say that we can not conceive of an occasion when such an injunction might be appropriate. In the case at bench we consider it to be inappropriate.

As indicated, we are persuaded that petitioners were not prejudiced. Counsel were permitted to and did argue the elements of freedom of speech and freedom of assembly. Both trial counsel, from their respective points of view, contrasted the concepts of these cherished rights with the type of conduct prohibited by the statutes in question. They both cautioned the jury that speech which merely stirs to anger, invites public dispute, or brings about a condition of unrest does not constitute inciting to riot or urging others to violence. The judge carefully instructed the jury that not every meeting where there is violence or boisterous or tumultuous conduct is an unlawful assembly. He further instructed them that an unlawful assembly to do a lawful act is limited to assemblies which are in themselves violent or which give rise to a clear and present danger of immediate violence. These concepts were argued by both the prosecutor and the defense attorney. At no time did the judge interfere in any way with defense counsel's argument to the jury on the elements of free speech and of free assembly; nor did the prosecutor request that he do so.

We do not believe that there is a reasonable possibility that the error complained of might have contributed to petitioners' conviction. Having in mind the rule of *Chapman* v. *California, supra*, 386 U.S. 18, we have reviewed the reporter's transcript and the exhibits received in the trial court. We are convinced beyond a reasonable doubt that any error at the trial was harmless.

The conviction of petitioner Parker of count III (violation of Pen. Code, § 404.6) is set aside. The order to show cause is discharged, and the petitions for habeas corpus are denied.

Spencer, P. J., and Lillie, J., concurred.

Petitioners' applications for a hearing by the Supreme Court were denied July 29, 1981. Bird, C. J., was of the opinion that the applications should be granted.