Filed 2/6/23  In re J.R. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE J.R., a Person Coming Under the Juvenile Court Law. | H049903 (Santa Clara County Super. Ct. No. 315JV41048) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.R.,<br><br>    Defendant and Appellant. | |

The minor, J.R., appeals from a judgment entered pursuant to Welfare and Institutions Code section 602, after the juvenile court found that the minor had committed the offenses of assault with a deadly weapon (Pen. Code § 245, subd. (a)(1)),[1] rioting (§§ 404, subd. (a), 405), and willfully resisting, delaying, and obstructing a peace officer in performance of his or her duties (§ 148, subd. (a)(1)).  On appeal, the minor contends that there was insufficient evidence to sustain the allegation of assault with a deadly weapon and the allegation of rioting.  For the reasons set forth below, we affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On August 22, 2015, the minor was being housed in the B2 unit of Santa Clara County juvenile hall. Melissa Payan was working as a group counselor at juvenile hall that day. She is a peace officer. About 12:45 p.m., she was in the activity area with the minor, along with several other juveniles, and two additional counselors.

A fistfight broke out involving juveniles B.P., C.C., and N.C. Payan and another counselor gave the three fighting juveniles verbal commands to stop but they did not comply.

While this fight was going on, Payan observed the minor hit juvenile J.B. in the back with a chair. J.B. was seated at a table in the room and was not engaged in the fight between B.P., C.C., and N.C. Payan then observed the minor holding a chair with both hands above his shoulder with the legs of the chair pointing up in the air. Payan saw the minor swing the chair directly at J.B.'s upper back or shoulder blade area and strike J.B. with the chair. The minor was standing one or two feet away from J.B. when he swung the chair at him. The minor held onto the chair throughout the act of swinging it at J.B., and the minor still had the chair in his hands after striking the victim with it.

The chairs in juvenile hall were typically made of plastic and had "a little give to them." The chair used by the minor to hit J.B. was made entirely of hard plastic and it weighed somewhere between three and eight pounds. Payan estimated that the chair was approximately three feet tall. Payan testified that in swinging the chair at J.B., the amount of force the minor used was more than would be necessary to return a ping pong ball across a table, and that it was closer to the amount of force used to swing a baseball bat.

Immediately after being struck by the chair, J.B. stood up and then J.B. and the minor began exchanging punches. Another juvenile, E.J., who had previously not been engaged in the fighting, began punching J.B. while the minor was still engaged in a fistfight with J.B. Staff members continued to shout at the juveniles to stop fighting and

2

get on the ground. The minor and the other juveniles eventually complied with the counselors' orders and ceased fighting.

Counselor German Robles interviewed the minor about one hour after the incident. After receiving a *Miranda*[2] warning, the minor told Robles that when he saw B.P. jump his friend, he decided to throw a chair at J.B. because the minor thought that J.B. was going to join the fight. Robles interviewed J.B. about 10 minutes after the incident and he did not observe any redness, swelling, or bleeding on J.B.'s body.

Later that day, when the minor was preparing to shower, he told counselor Salvador Mora something to the effect of: "[T]oday was a good day, . . . I hit somebody with a chair." Mora asked the minor if he thought hitting someone with a chair constituted fun and a good day, to which the minor replied, "Yeah, you know, everybody was fighting, I was able to hit someone with a chair."

The prosecution admitted a photograph of the same type of chair that the minor swung at J.B. At the contested hearing, Payan demonstrated to the court how the minor held the chair and swung it at J.B. using the same type of chair that the minor had used.

On October 21, 2015, the Santa Clara County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602 alleging that the minor committed assault with a deadly weapon (§ 245, subd. (a)(1); count 1), rioting (§ 404, subd. (a); count 2), and resisting arrest (§ 148, subd. (a)(1); count 3). The petition also alleged as to count 1 that the minor personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)).

On November 13, 2015, after a contested jurisdictional hearing, the court found true the allegations of all three counts, as well as the allegation of use of a deadly and dangerous weapon. In finding count 1 to be proven true beyond a reasonable doubt, the court stated:

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

3

"[E]ven though it's a chair, it was picked up over the head of the [victim] – and I have to say that the demonstration by Payan, forgetting forced used, but just the lifting of this chair was very impressive to the court. Because the chair, although may be five to eight pounds, is quite large, it's quite long. And the record doesn't show that and neither does the picture because pictures can't capture dimensions. But when [Payan] put it over her head . . . that chair looked to be at least half as long as or a third as long as her and she was 5'1."

The court then stated that the chair "is large and bulky and awkward and maybe only five to eight pounds but it was intentionally being used at that point as a weapon" and "[i]t was being used to hurt someone."

On December 9, 2015, the court declared the minor a ward of the court and ordered him committed to the Santa Clara County Juvenile Rehabilitation Facilities enhanced ranch program for six to eight months.

The minor filed a notice of appeal on February 9, 2016. On August 4, 2022, this court granted the minor's motion to construe the notice of appeal as timely filed.[3]

## II. DISCUSSION

On appeal, the minor contends that the evidence was insufficient to sustain the allegation of assault with a deadly weapon and the allegation of rioting.

### A.     *Standard of Review*

The same standard governs review of the sufficiency of the evidence in adult criminal cases and juvenile cases. (*In re A.G.* (2020) 58 Cal.App.5th 647, 653.) "In considering the sufficiency of the evidence in a juvenile proceeding, the appellate court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*In re Babak S.* (1993)

_____

[3] The superior court did not transmit the notice of appeal to this court until March 28, 2022.

4

18 Cal.App.4th 1077, 1088-1089, quoting *In re Jose R.* (1982) 137 Cal.App.3d 269, 275 (*Jose R.*).) The appellate court must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

**B.** *Analysis*

**1.    Assault with a Deadly Weapon**

The minor argues that the prosecution failed to present sufficient evidence to sustain the allegation that he committed assault with a deadly weapon because the chair was not an inherently dangerous weapon, and the minor did not use the chair in a manner likely to cause great bodily injury or death.

Section 245, subdivision (a)(1) prohibits "an assault upon the person of another with a deadly weapon or instrument other than a firearm." A "deadly weapon" within the meaning of section 245, subdivision (a) is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." (*Jose R.*, *supra*, 137 Cal.App.3d at pp. 275-276.) Some objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law because the ordinary use for which they are designed establishes their character as such. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1029.) "Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury." (*Ibid.*) "In determining whether an object not inherently deadly or dangerous acquires this characteristic, the trier of fact may look to the nature of the weapon, the manner of its use, and all other factors that are relevant to this issue." (*Jose R.*, *supra*, at p. 276.)

For an object to qualify as a deadly weapon based on how it was used, "the defendant must have used the object in a manner not only capable of producing but also *likely to produce* death or great bodily injury." (*In re B.M.* (2018) 6 Cal.5th 528, 530 (*B.M.*), italics in original.) The use of an object in a manner likely to produce death or

great bodily injury "requires more than a mere possibility that serious injury could have resulted from the way the object was used." (*Id.* at p. 534.) While it is not appropriate to consider how an object could have been used, a court may consider what harm could have resulted from the way the object was actually used, which "necessarily calls for an assessment of potential harm in light of the evidence." (*Id.* at p. 535.) "Because the statute speaks to the capability of inflicting significant injury, neither physical contact nor actual injury is required to support a conviction." (*People v. Brown* (2012) 210 Cal.App.4th 1, 7.)

"Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate." (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748).) "The focus is on the force actually exerted by the defendant, not the amount of force that could have been used." (*Ibid.*)

Here, the court considered the nature of chair and the manner in which it was used and reasonably concluded that the minor's actions had the likelihood to cause serious bodily injury. There was testimony that the chair was made of hard plastic, that it was approximately three feet tall, and that it weighed as much as eight pounds. There was also evidence that the minor swung the chair with its legs facing outward, with a force similar to that used to swing a baseball bat, and that J.B. was seated and facing away from the minor. The court noted that it was particularly persuaded by the reenactment by counselor Payan, where she used the same type of chair and demonstrated the movement used by the minor to strike J.B. It was not unreasonable to infer under these facts that the minor's actions with the chair were likely to cause serious bodily injury.

The minor contends that under *People v. Beasley* (2003) 105 Cal.App.4th 1078 (*Beasley*), the evidence presented here was insufficient to support the allegation of assault with a deadly weapon, but *Beasley* does not support this conclusion. In *Beasley*, the court held that there was insufficient evidence that the defendant had used either a broomstick or a hollow plastic vacuum cleaner attachment as a deadly weapon. (*Id.* at p. 1088.) In

6

reaching that conclusion, the court noted that there was no evidence regarding the degree of force the defendant used in hitting the victim with the broomstick, and neither the stick itself nor photographs of it were introduced into evidence. (*Id.* at p. 1087.) As to the plastic vacuum part, the court in *Beasley* noted that neither the vacuum attachment nor a photograph of it were in evidence, but that it must have been "hollow to function as part of a vacuum cleaner" and "[s]triking an adult's shoulder and back with a hollow plastic instrument is not likely to produce significant or substantial injury." (*Id.* at p. 1088.)

Here, by contrast, the prosecution introduced a photograph of the chair, and it also presented an in-court demonstration using an identical chair, which showed the degree of force used by the minor in swinging the chair at J.B. The photograph shows that the chair was made of solid plastic, unlike the hollow vacuum part at issue in *Beasley*. Also, unlike in *Beasley*, there was testimony here as to the weight and dimensions of the chair. The court was therefore able to assess the size and composition of the chair, as well as the force used in the assault. These facts that were before the court supported the reasonable inference that the minor used the chair in a manner likely to produce great bodily injury under section 245, subdivision (a)(1).

Furthermore, the court in conducting this inquiry is permitted to consider "what harm could have resulted from the way the object was actually used." (*B.M.*, *supra*, 6 Cal.5th at 535.) In *People v. Koback* (2019) 36 Cal.App.5th 912, 925 (*Koback*), the defendant lunged at the victim's torso, and swung " 'with force' " his fist in which he held a key fob with the sharp end of a key sticking out from between his fingers. Although the defendant in *Koback* did not make contact with the victim, the court determined that the evidence supported a conclusion that serious bodily injury was likely based on the way in which the defendant had used the key. (*Ibid.*) Similarly, the court here did not err in determining that the "large and bulky and awkward" chair that the minor swung down on to J.B. from above while his back was turned had the potential to cause serious bodily injury, given the possibility that J.B. could have leaned back or

7

turned around during the minor's assault. (See *In re D.T.* (2015) 237 Cal.App.4th 693, 700 [affirming trial court's conclusion that the object used in the assault was a deadly weapon by considering the injuries that could have occurred had someone bumped into the victim or had the perpetrator lost his balance while holding the weapon].)

Accordingly, presuming in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence, we conclude that substantial evidence supports the finding that the minor committed assault with a deadly weapon.

### 2. Rioting

The minor contends that the prosecution did not sufficiently prove the element of "acting together" as was required to sustain the allegation that the minor was "rioting" under section 404.

Section 404, subdivision (a) defines "riot" as "[a]ny use of force or violence, disturbing the public peace, or any threat to use force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law." "It [is] not necessary that a previous agreement between the aggressors should have been alleged, or have existed, to bring such offenses within the inhibitions of section 404." (*People v. Bundte* (1948) 87 Cal.App.2d 735, 743.) Instead, it is "the *concurrence* of unlawful action by individuals in the use, or threat to unlawfully use force or violence that constitutes the offense of riot." (*People v. Cipriani* (1971) 18 Cal.App.3d 299, 304 (*Cipriani*), italics in original.) "The law prohibiting riots is based on the need to prevent the combined effect of concurring violent acts, not conspiracy." (*People v. Abelino* (2021) 62 Cal.App.5th 563, 578.)

Here, in reviewing the record in the light most favorable to the judgment below, there was sufficient evidence to support the court's finding sustaining the riot allegation, because the evidence shows that the minor acted concurrently with the other fighting juveniles in an unlawful action. Appellate counsel argues that the minor's assault of J.B. was an act that was separate from the fight occurring between B.P., C.C., and N.C., and

8

thus there was no concurrence of action, but the evidence does not support this characterization. The minor told counselor Robles that he hit J.B. with the chair because of the fighting that had broken out between B.P., C.C., and N.C., and he also told counselor Mora that he had fun hitting J.B. with the chair while "everybody was fighting," which supports the inference that the minor joined in with the other juveniles in a concurrent unlawful action. (See *Cipriani*, *supra*, 18 Cal.App.3d at pp. 306-307 [where defendant and others threw rocks at National Guard troops from disparate locations within cordoned off area, there was substantial evidence that a riot was in progress and that defendant was a participant therein].)

We therefore determine that there was sufficient evidence to sustain the allegation of rioting.

### III. DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:




_____
DANNER, J.




_____
WILSON, J.

*People v. J.R.*
**H049903**