*1082 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, el Sr. Thomas Rivera Schatz (peticionario) y nos solicita la revocación de la Resolución emitida y notificada el 10 de diciembre de 2002, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante la misma, el TPI declaró No Ha' Lugar la Moción de Desestimación presentada por el peticionario a tenor con la Regla 64(p) de las Reglas de Procedimiento Criminal.
Nos corresponde resolver si en esta etapa de los procedimientos la prueba hasta ahora presentada contra el peticionario en la vista preliminar, por mínima que haya sido, dejó establecida la probabilidad de la comisión del delito de motín y el vínculo del peticionario al mismo.
Luego de un detenido estudio del expediente con su voluminosa transcripción de la prueba desfilada en la vista preliminar, y el derecho penal sustantivó aplicable, determinamos expedir el auto de certiorari y confirmar la Resolución recurrida.
I
El 28 de junio de 2002, se presentó una denuncia en contra del peticionario, imputándole la comisión del delito de motín, Art. 261 del Código Penal. Posteriormente, el 29 de agosto de 2002, se encontró causa probable para acusar al peticionario junto a otros tres imputados por el mismo delito. El 9 de septiembre de 2002 se presentó el correspondiente pliego acusatorio contra éste. Allí se le imputó lo siguiente:
“Allá en o para el día 20 de junio de 2002, y en San Juan, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de San Juan, ilegal, voluntaria, maliciosa, a sabiendas y con intención criminalmente obrando junto con otros y sin autoridad en Ley, perturbaron la paz y la tranquilidad pública de personal, empleados y funcionarios de la Oficina de la Procuradora de la Mujer, al emplear y utilizar fuerza y violencia, consistente en que el aquí imputado, en unión a otras personas que lo acompañaban, penetró e irrumpió en la Oficina de la Procuradora' de la Mujer, ubicada en la Calle Tetúan número 253 del Viejo San Juan, utilizando diferentes partes de su cuerpo, mediante puños, codazos, manotazos, empujones y de forma atropellante, logrando acceso a la antesala de dicha oficina, resultando lesionadas emocional y físicamente varias personas, siendo estos hechos contrarios a la ley. Lo que constituye el delito de motín.” 
El 13 de septiembre de 2002, el peticionario formuló alegación de “no culpable” en el acto de lectura de la acusación.
Así las cosas, el 3 de octubre de 2002, el peticionario presentó una Moción de Desestimación al amparo de la Regla 64(p) de Procedimiento Criminal. El Ministerio Público presentó su oposición a la misma el 29 de *1083 octubre de 2002. Por segunda vez, el 4 de noviembre de 2002, el peticionario radicó una Moción de Desestimación bajo la Regla 64(p), por alegada violación al debido proceso de ley. Junto a la misma, presentó dúplica a la oposición del Ministerio Fiscal en cuanto a la primera moción de desestimación. Oportunamente, el Ministerio Público expuso su posición mediante una segunda moción. El 2 de diciembre de 2002, el peticionario presentó una Réplica a la segunda moción en oposición a la desestimación presentada por el Ministerio Público. Ese mismo día, luego de celebrada una vista argumentativa en la que se examinaron ciertas fotos y un vídeo admitidos en la vista preliminar, el TPI emitió, el 10 de diciembre de 2002, la Resolución que ahora nos ocupa, declarando NO HA LUGAR la desestimación de la causa criminal contra el peticionario.
Inconforme con dicha determinación, el peticionario acudió ante nos el 9 de enero de 2003 mediante el recurso de autos. Señaló como único error el siguiente:

“ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCION PRESENTADA POR LA DEFENSA AL AMPARO DE LA REGLA 64(P) DE LAS DE PROCEDIMIENTO CRIMINAL AUN CUANDO SE DEMOSTRO QUE DURANTE LA VISTA PRELIMINAR NO HUBO AUSENCIA TOTAL DE PRUEBA EN CUANTO A VARIOS DE LOS ELEMENTOS DEL DELITO IMPUTADO.”

En su recurso, el peticionario esboza varios fundamentos para sustentar su posición. En primer lugar, alega que ningún testigo en la vista preliminar declaró que el peticionario lo agredió mediante puños, codazos, manotazos o empujones; o que se sintiera amenazado, intimidado o de cualquier forma perturbado o alterado por acciones del peticionario. En segundo lugar, plantea que el testimonio del Sr. Roberto García, aun aceptándose como cierto para fines estrictamente argumentativos, de por sí no constituye prueba para sostener la acusación. Dicho testigo de cargo afirmó que “lo vió allí y estuvo hablando malo todo el tiempo ”. Sostiene el peticionario, además, que en el vídeo no se le observa haciendo tales expresiones ni empleando fuerza. Argumenta que lo que sucedió fue que intentó “evitar otra agresión, con medios proporcionales y racionales”, lo que de por sí no constituye delito.
Del mismo modo, plantea que el mencionado testigo no dijo haberse sentido ofendido por las alegadas palabras, y expresó que las mismas iban dirigidas a un tercero. Además, expresó que dicho testigo declaró en cuanto al ánimo del peticionario, que éste se encontraba “tranquilo”. En cuarto lugar, afirma, sin mayor análisis, que al no radicarse denuncias contra los empleados y testigos de cargo que alegadamente cometieron agresiones, y al éste ser un líder del Partido Nuevo Progresista, su denuncia es una de carácter selectivo.
Mediante Resolución fechada el 31 de enero de 2003 y notificada el 4 de febrero de 2003, concedimos 10 días al Procurador General para expresarse sobre el recurso presentado. Oportunamente, el Procurador fijó su posición mediante escrito el 14 de febrero de 2003. Alega, en síntesis, que el peticionario no cumplió con su carga de persuadir al TPI sobre los méritos de su Moción de Desestimación; es decir, que existe ausencia total de prueba sobre uno o más de los elementos del delito. Además, a la luz de una discusión sobre los principios de derecho penal sustantivo sobre el delito de motín, aduce ha de concluirse que la prueba admitida en la vista preliminar estableció la probabilidad de que se cometió tal delito por el peticionario; por lo que actuó correctamente el TPI al denegar la Moción de Desestimación. Así trabada la controversia de autos, pasamos a resolver.
II
El Artículo 261 del Código Penal tipifica y penaliza el delito de motín de la siguiente manera:

“Todo empleo de fuerza o violencia, que perturbe la tranquilidad pública, o amenaza de emplear tal fuerza o violencia, acompañada de la aptitud para realizarla en el acto, por parte de dos o más personas, obrando juntas y sin autoridad en ley, constituye motín, y toda persona que participare en un motín será sancionada con. 
*1084
pena de reclusión por un término fijo de dos años. De mediar circunstancias agravantes, la pena jija establecida podrá ser aumentada hasta un máximo de tres (3). años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de (1) año.

* El Tribunal, a su discreción, podrá imponer la pena fija de reclusión establecida o. pena de multa qüe no excederá de los dos mil (2,000) dólares, o ambas penas. ”

Nuestro artículo, de clara estirpe anglosajona y con orígenes del common law, proviene del anterior Código Penal de 1937 (Artículo 359, 33 L.P.R.A. §1432) que a su vez fue tomado literalmente del Artículo 404(a) del Código Penal del estado de California. Bajo nuestro estado de derecho anterior, existían tres delitos relacionados, a saber: motín (Art. 359), asamblea ilícita (Art. 362) y tumulto (Art. 361). Cuando se aprobó el Código Penal de 1974, los últimos dos quedaron confundidos dentro del delito de motín, y fueron respectivamente derogados. 
En Puerto Rico no existe jurisprudencia reciente que aborde el alcance del vigente artículo sobre motín desde la aprobación del Código Penal en 1974. Desde el anterior estado de derecho, sin embargo, se han esbozado claramente las circunstancias exigidas para entenderse perpetrado el delito de motín. En Pueblo v. Ortiz et al, 17 D.P.R. 1198 (1911), los elementos del delito se enumeraron como sigue: .

“1. que sean dos o más los acusados;

2. que obren juntos y sin autoridad en ley;

3. que se emplee fuerza o violencia, o se amenace emplear tal fuerza o violencia acompañada de la aptitud para realizarla en el acto, y

4. que se perturbe la tranquilidad publica.”

El elemento de que sean dos o más los acusados quedó descartado en Pueblo v. Yoder Hernández, 101 D.P.R. 360 (1973). Allí se denunció al acusado quien, obrando junto a otros y sin autoridad en ley, invadió terrenos de la Universidad de Puerto Rico, Recinto de Mayagüez, e irrumpió en la cafetería del Colegio de Agricultura y Artes Mecánicas, destruyendo propiedad ajena y causando daños. El acusado fue hallado culpable y oportunamente apeló su sentencia, invocando a Pueblo v. Ortiz, supra. Alegó que el hecho de haberse incluido solamente a él en la acusación la hacía insuficiente, en derecho por faltar un. elemento .esencial del delito..El Tribunal Supremo determinó que la-inclusión de.dos o más acusados no es elemento esencial del.delito. Señaló que lo que requiere la ley es que la alegación deje establecido que el acusado realizó los denías elementos del delito en unión a otras personas, obrando juntas y sin autoridad en ley. Concluyó en el mencionado caso que el acusado estuvo presente y participó en el motín, elementos que a juicio del Tribunal Supremo, establecieron su culpabilidad.
Cómo delito contra el orden público, el delito de motín se consuma sin necesidad de actos específicos de fuerza o violencia contra la persona y la propiedad. A esos efectos, las conductas lesivas contra dichos bienes jurídicos han sido tipificadas en secciones distintas de nuestro Código Penal, tales como el delito de agresión (Art. 94) y el delito de daños (Art. 179). Por ello, en la medida en que dicho delito tiene como fin el proteger el orden público, el elemento específico de fuerza y violencia necesario para su consumación se define como aquella conducta susceptible de perturbar la paz pública de forma que suscite temor o alarma en una persona promedio.
Acorde con dicho principio, los penalistas anglosajones Perkins y Boycé señalan que: “... an actual 'assault or destruction of property may or may not be incident to the execution of a riot'. For example,, a parade may be *1085 conducted, in such a manner... as to constitute a riot.” (Citas Omitidas). Además, exponen que basta para su comisión “the execution of some enterprise, lawful or unlawful, in such a violent, turbulent and unauthorized manner as to create a likelihood of public terror and alarm.” 
Por otro lado, la Dra. Dora Nevárez Muñiz caracterizó la conducta constitutiva de motín de la siguiente forma: “Es un elemento del delito que la conducta constitutiva de motín se lleve a cabo de manera que se perturbe la tranquilidad pública, la cual se definió bajo el estado de derecho del Código Penal derogado como la tranquilidad de un vecindario”. (Citas Omitidas) Pueblo v. Pacheco, 48 D.P.R. 602 (1935). 
En Pueblo v. Ríos et al., 31 D.P.R. 528 (1923), ya se había resuelto que no es requisito indispensable del delito de motín que “los actos de fuerza o violencia tengan que emplearse contra determinada persona o propiedad. [Los actos físicos de fuerza o violencia] necesariamente han de producir el efecto de perturbar la tranquilidad pública que es esencialmente lo que integra el delito de motín. ”
Otro elemento esencial del delito de motín es que, además de obrar en unión a otras personas, los actos cometidos se realicen “sin autoridad en ley”. Ello, sin embargo, no equivale a sostener que los actos en cuestión para configurar el delito, deban ser ilícitos o ilegales o constituir una asamblea ilícita. Para analizar el alcance del elemento de “sin autoridad en ley”, estimamos correcto remitimos a la posición de varios tratadistas del common law, quienes estiman irrelevante la distinción de las acciones que dan base al delito, o el fin que ellas persiguen, como uno “legal o ilegal”. A esos efectos, se ha aseverado que: “a riot is a tumultuous disturbance of the peace by three or more persons acting together...An the execution of some enterprise, lawful or unlawful, in such a violent, turbulent and unauthorized manner as to create likelihood of public terror and alarm. ” Además, del propio texto de nuestro Artículo 261 no surge requisito expreso alguno de conducta ilícita. Jurisdicciones cónsonas al tenor literal de nuestro artículo, tales como California, Utah, y Oklahoma, estiman que lo decisivo para la comisión del delito no es el origen lícito o ilícito de la actividad, sino el efecto que ésta tiene al culminar. Así analizado, una actividad perfectamente lícita que permite el ejercicio de derechos reconocidos puede culminar en motín si tiene el efecto de causar terror, alarma o intranquilidad en las personas allí presentes. En fin, si el efecto de la actividad es alterar el orden público, la paz y tranquilidad de los presentes, estamos ante un acto que, si bien legítimo, ha degenerado en delito.
Por otro lado, las jurisdicciones cuyo delito de motín es afín al nuestro, han decidido que dicho delito no requiere acuerdo previo entre los que se hallen presentes en el motín. Ello siendo así, debe considerarse autor del delito, acorde con el inciso (d) de nuestro Artículo 35 del Código Penal, 33 L.P.R.A. § 3172, toda persona que de forma alguna coopera en la comisión del delito. Por ende, para propósitos de autoría, debe considerarse toda persona que rebase la mera presencia y que efectúe actos de apoyo y promoción al acto. 
m
Como se sabe, la vista preliminar existe para auscultar si el Estado tiene una adecuada justificación para someter a un imputado de delito grave ajuicio. En este sentido, el Ministerio Público tiene el peso de demostrar que “existe causa probable para creer que se ha cometido un delito y que la persona [imputada]lo cometió”. Regla 23 (c) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 23 (c).
Su función esencial es la de evitar que se someta al imputado a los rigores de un proceso criminal sin que existan suficientes fundamentos que lo justifiquen. Pueblo v. Ortiz Vega, 149 D.P.R. _ (1999); 99 J.T.S. 154; Pueblo v. Andaluz Méndez, 143 D.P.R.656,662 (1997). Por otro lado, también se ha enfatizado que aunque la vista preliminar es un procedimiento judicial, no es un “mini juicio”. Por lo tanto, el Ministerio Público no está obligado a presentar prueba de tal manera convincente como para sostener una convicción. Basta que el Ministerio Público presente un mínimo de prueba o una mera “scintilla” que demuestre la probabilidad de que el delito se cometió y que lo cometió el imputado. Pueblo v. Rivero, Lugo y Almodóvar, 121 D.P.R. 454, 475 (1988).
*1086 Una vez se efectúa la determinación de causa probable, la misma goza, como cualquier otra determinación judicial, de una presunción legal de corrección. Rabell Martínez v. Tribunal Superior, 101 D.P.R. 796,799 (1973). Por ello, la misma ha de tenerse presente al disponer de una moción de desestimación fundamentada en la Regla 64(p) de las Reglas de Procedimiento Criminal.
Por su parte, la Regla 64(p) de las de Procedimiento Criminal rige la desestimación de la causa criminal. Permite a una persona imputada de delito solicitar la desestimación de una denuncia o acusación bajo el fundamento de que "se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho". 34 L.P.R.A. Ap. II, R. 64 (p).
En Pueblo v. Kelvin Branch, 154 D.P.R. _ (2001); 2001 J.T.S. 108, el Tribunal Supremo estableció las dos instancias reconocidas en que procede la desestimación de una causa criminal bajo la Regla 64(p), a saber: (1) cuando la parte promovente de la solicitud demuestra que en la vista hubo ausencia total de prueba sobre la existencia de causa probable para creer que el imputado cometió el delito por el cual es procesado, Pueblo v. González Pagán, 120 D.P.R. 684 (1988); Pueblo v. Pérez Suárez, 116 D.P.R. 807 (1986); y (2) cuando se ha incumplido con los requisitos de ley y jurisprudenciales que gobiernan la determinación de causa probable, Pueblo v. Padilla Flores, 127 D.P.R. 698 (1991).
En cuanto a la primera categoría, que establece como fundamento para desestimar la ausencia total de prueba, el Tribunal Supremo determinó en Pueblo v. Andaluz Méndez, supra, a la pág. 662, que en la vista preliminar para acusar "el Ministerio Público debe presentar evidencia, legalmente admisible en un juicio plenario, sobre todos los elementos del delito imputado en la denuncia y su conexión con el imputado." (Enfasis nuestro). El Tribunal Supremo, además, ha dictaminado que la prueba de cargo en esta etapa del procedimiento no sólo debe ser suficiente para establecer el escaso quántum de prueba requerido, sino también debe ser pmeba que sería legalmente admisible en un juicio conforme a las Reglas de Evidencia. Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 664 (1985); Pueblo v. Esteves Rosado, 110 D.P.R. 334 (1980). Véase, además, la opinión disidente del Hon. Federico Hernández Denton, Juez Asociado, en Pueblo v. Sierra Figueroa, 2002 JTS 108, 157 D.P.R. _ (2002).
En dicho caso se halló causa probable contra el imputado Sierra Rivera por el delito de actos lascivos contra una menor. Para dicha determinación, la cual fue confirmada por hallarse dividido el Tribunal Supremo, dada la inhibición de uno de los jueces, desfiló como única pmeba de cargo en la vista preliminar cierta evidencia inadmisible de referencia contra- el acusado. El disenso antes aludido invocó la ausencia total de pmeba admisible como fundamento para la desestimación bajo la Regla 64(p) de Procedimiento Criminal.
El requisito de ausencia total de pmeba responde al propósito mismo de la vista preliminar, que exige como escaso quántum de pmeba una “scintilla!'’ de evidencia que pueda establecer la mera probabilidad de que se cometió el delito y que fue el imputado quien probablemente lo cometió. Exigir otra cosa que no sea la ausencia total de pmeba equivaldría a realizar otro mini juicio antes de comenzar los procedimientos criminales, por lo que se debe desalentar el uso de la regla como una tercera determinación de causa probable. Pueblo v. González Pagán, 120 D.P.R. 684, 688 (1988); Pueblo v. Rodríguez Ríos, 136 D.P.R. 685 (1990); Chiesa, Ernesto, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. III, sec. 26.2. (P), pág. 257.
El caso de Pueblo v. Kevin Branch, supra, conforma la segunda categoría, al determinar el Tribunal Supremo que existe una violación constitucional a los derechos del acusado el carecer de un intérprete que tradujera al inglés las expresiones de los testigos, abogados y del juez en la etapa de vista preliminar. El Tribunal Supremo afirmó que “el hecho de que esta ausencia haya ocurrido en etapas previas al juicio en su fondo, como lo es la vista preliminar, no altera dicha realidad”. Pueblo v. Kevin Branch, supra, a la pág. 1540.
*1087 Al atender una moción bajo la Regla 64(p), el tribunal tiene la facultad de señalar una vista y recibir prueba en cuanto a las alegaciones a favor de la desestimación. También tiene la opción de rechazarla de plano si, de su faz y las constancias en el expediente, no resulta meritoria en cuanto al extremo de ausencia total de prueba. Pueblo v. González Pagán, 120 D.P.R. 684 (1988). En el caso de autos, surge de la Resolución recurrida que el 2 de diciembre de 2002 se celebró una vista argumentativa a los efectos de discutir la moción de. desestimación del peticionario.
IV
Aclarado el marco doctrinal que rige la controversia de autos, examinemos la prueba que tuvo ante sí el TPI en la vista preliminar. En cuanto al peticionario, concluye que “el testigo García Vázquez lo sitúa [a Thomas Rivera Schatz] agarrado de la puerta de entrada, profiriendo todo el tiempo palabras obscenas; se señala ubicado en el área de las banderas ayudando a poner la bandera de los Estados Unidos. Las fotos y el vídeo lo ubican forcejeando con un empleado y utilizando fuerza y violencia para lograr acceso al interior.” Veamos.
El testimonio del Sr. Roberto García Vázquez, luego de identificar en corte abierta la identidad del peticionario, consistió principalmente en lo siguiente:

“P ¿Quién lo agarraba?

R...elSr. Edwin Mundo. El Sr. José Aponte lo tenía agarrado por aquí, en su camisa, y...

P Luego de...(ininteligible)

R Y el Sr. Rivera Schatz, que estaba agarrado de la puerta con la mano, trataba de agarrdflo y profería palabras obscenas todo el tiempo hacia el compañero de él.

P ¿ Qué tipo de palabras?

R Todo tipo de palabras obscenas.

P (Ininteligible)

R Pues, con su permiso y disculpa, pues, maricón, hijo de puta y todo el tiempo eso era sin parar y no sólo él, había más gente también profiriendo ese tipo de palabras también, público como tal. Y seguíamos con la fuerza...”. 

Hemos además observado detenidamente el vídeo traído como prueba de cargo que contiene la regrabación de las noticias del Canal 6 durante el día de los hechos. En él, aparece el peticionario, vestido con una camisa oscura, cercano al área izquierda contigua a la puerta de entrada (ya abierta) de la Oficina de la Procuradora de la Mujer. En un momento dado, el vídeo exhibe al peticionario sosteniendo el marco de la puerta con su brazo izquierdo. Además, evidencia al peticionario moviendo su cuerpo hacia el frente y logrando acceso al interior del edificio de la Procuraduría a pesar de la muchedumbre presente.
En una toma diferente del vídeo, el peticionario, con sus brazos hacia abajo, aparece intentando sujetar a una persona en frente suyo. En todo momento, los gestos y movimientos del peticionario denotan su interés de entrar al vestíbulo de la Procuraduría y colaborar, participar y formar parte de la colocación de la bandera. 
A la luz de la prueba arriba discutida, analicemos cada uno de los argumentos del peticionario. Primeramente, la defensa argumenta que ningún testigo declaró haber sido objeto de agresión por el *1088 peticionario mediante puños, codazos, manotazos y empujones; o perturbado o alterado, como consecuencia, las acciones del peticionario. Es decir, la defensa del peticionario plantea la ausencia total de prueba sobre conducta delictiva o el despliegue de fuerza o violencia en el lugar o en el proceso de entrada al mismo.
Estimamos que como cuestión de derecho penal sustantivo, toda prueba que tienda a demostrar actos específicos de agresión por parte del peticionario resulta innecesaria. Como se sabe, los actos independientes y particulares de agresión, de haber existido, no forman parte de los elementos del delito de motín. Pueblo v. Ríos, et al, supra. Por tal razón, entendemos que no constituía obligación del Ministerio Público haberlos probado, ni mucho menos provisto en forma específica y particular para el imputado. El único elemento requerido para el delito de motín es aquella fuerza o violencia o amenaza de fuerza o violencia junto con la aptitud de realizarla, susceptible de perturbar la paz pública. En virtud de ello, el planteamiento principal del peticionario a los efectos de que él no cometió acto agresivo o conducta delictiva alguna contra alguien o algo, es totalmente inmeritorio en derecho.
De otra parte, reclama la defensa que el testimonio del Sr. Roberto García no sólo es falso, sino también insuficiente para sostener la denuncia. A esos efectos, argumenta que la prueba desfilada es inconsistente entre sí, ya que el vídeo sin audio no muestra al peticionario profiriendo palabras obscenas ni la aptitud de éste para emplear fuerza. Sugiere, en efecto, que el peticionario trataba de “[e]vitar otra agresión, con medios proporcionales y racionales, lo que no constituye delito.” No le asiste la razón.
Analizadas cuidadosamente las expresiones del testigo Roberto García en conjunto con el vídeo, concluimos que el Tribunal de Instancia no erró en su apreciación de la prueba. Las conclusiones del TPI con respecto a que el peticionario desplegó fuerza o violencia, tanto física como verbal, y que con ello causó temor y alarma a los presentes quedaron sustentadas. Ello siendo así, se satisfizo el escaso quántum de prueba requerido en esta etapa de los procedimientos. Como advertimos anteriormente, las imágenes muestran al peticionario utilizando el marco, de la puerta como soporte para poder entrar al vestíbulo del edificio. Ello es muestra inequívoca de su participación activa en el incidente. Las palabras obscenas proferidas por el peticionario, dadas las particulares circunstancias, constituyen ciertamente un despliegue de violencia de tipo verbal con el efecto de perturbar la paz pública.
En segundo lugar, el peticionario señala que no se probó el elemento de que las actuaciones realizadas sean “sin autoridad de ley”. A esos efectos, aduce que “[e]l colocar la bandera no era un acto ilegal. No causaba daño a nadie y era cónsono con la orden de la Gobernadora”.
Consideramos que si bien es cierto que la actividad se originó como una perfectamente lícita en ley, la misma desembocó en la perturbación y alteración del orden público. Habida cuenta de que una actividad perfectamente lícita puede desencadenar en motín, el argumento del peticionario de que “colocar la bandera no era un acto ilegal” es inconsecuente. Lo que el peticionario no podía hacer era tomarse en sus manos el cumplir con el deber ministerial de otro funcionario público, intentando entrar a dicha dependencia pública para esos propósitos. Concurrimos con la posición del Procurador al concluir que las acciones del peticionario' mientras irrumpía en dicha dependencia pública, de la forma y manera en que lo hizo, a los fines de cooperar con desplegar la bandera norteamericana, no son hechas con autoridad de ley.
Finalmente, el peticionario elabora un planteamiento, basado en cierta jurisprudencia federal y estatal, a los efectos de dejar establecido que el elemento de asamblea ilícita, o una “intención común premeditada” entre los presentes, es requisito para el delito de motín. De ahí, el peticionario deriva su argumento de que bajo dicha modalidad de motín, la mera presencia de una persona no constituye participación en el motín. Es decir, quien no forma parte del intento común en convocar una asamblea ilícita, no puede ser condenado por su “mera presencia”. 
*1089 De entrada, notamos que el propio peticionario advierte que si bien la definición federal contiene todos los elementos de nuestro artículo, existen diferencias con el nuestro. Ello es también evidente en cuanto a la jurisprudencia que utiliza para apoyar su argumento y las jurisdicciones cónsonas a nuestro estatuto. Es precisamente por ello, que optamos por seguir la jurisprudencia de aquellas jurisdicciones norteamericanas afines con nuestro artículo, de cuyo texto no se desprende literalmente requisito alguno de “asamblea ilícita”, o intento común. En virtud de no. requerirse tales elementos, estamos ante una situación en la que la pmeba presentada estableció que el peticionario, no sólo estuvo presente, sino que también de alguna forma asumió una postura de coautoría hacia la perturbación de la paz pública mediante sus acciones y expresiones. Con ello se satisfizo el escaso quántum de pmeba requerido en derecho.
Por último, debemos abordar el escueto argumento del peticionario que su encausamiento o denuncia es uno selectivo. El Tribunal de Instancia, por su parte, determinó que dicho planteamiento no puede ser levantado en la vista preliminar o en la moción de desestimación acorde con la Regla 64(p) de Procedimiento Criminal. Adju'dicó dicho planteamiento, determinando que la decisión respecto a quién y cuándo imputar el delito, corresponde a la Rama Ejecutiva, sujeta, claro está, a los parámetros del Artículo 78 del Código Penal en cuanto a la prescripción de los delitos.
Advertimos que nuestro ordenamiento constitucional reconoce la defensa de procesamiento criminal selectivo como una defensa afirmativa que deberá presentarse, alegarse y pírobarse por el imputado en el foro de instancia. Ello, debido al arraigado principio de que el Estado no puede discriminar entre personas igualmente situadas. Art. II, Sec. 1 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico; Pueblo v. Rexach Benítez, 130 D.P.R. 273 (1992); Wayte v. United States, 470 U.S. 598 (1985). En Pueblo v. Rexach Benítez, supra, se establecieron los contornos, específicos de dicha defensa en la Opinión Concurrente y de Conformidad por el Juez Asociado Hernández Denton. Sin embargo, el Tribunal Supremo dejó en sin resolver la etapa procesal particular en que esta defensa debe ser planteada.
No obstante, es deber de la parte afectada levantar dicha defensa con pmeba pertinente para fundamentarla, ya que a toda acción del Estado le asiste a su favor una presunción de corrección. Una vez establecido un caso prima facie de discrimen, le corresponderá al Estado refutar la evidencia con miras a establecer que la investigación y acusación no son atribuibles a razones prohibidas por nuestra Constitución. Para prevalecer, el acusado debe establecer que: (1) personas similarmente situadas no han sido acusadas, y que (2) la selección discriminatoria por parte del Ministerio Público al acusar, ha sido intencional, de mala fe y fundamentada en consideraciones impermisibles. Pueblo v. Rexach, supra, Opinión Concurrente, pág. 316.
Cuando la defensa se presenta con el propósito de lograr la exoneración de los cargos, la norma general de los tribunales federales es que la alegación se presenta antes del juicio conforme a la Regla 12(b)(2) de las de Procedimiento Criminal Federal. Sin embargo, apunta la Opinión Concurrente de Pueblo v. Rexach Benítez, supra, que dicha norma varía entre las jurisdicciones estatales. 
Examinados los pronunciamientos del Tribunal Supremo en Pueblo v. Rexach Benítez, supra, no vemos razón por la cual debamos intervenir con la determinación de instancia en cuanto a la defensa de encausamiento selectivo. Debemos precisar, además, que como cuestión de hecho no se nos ha puesto en posición de hacer pronunciamientos al respecto, dada la escueta alegación del peticionario que ni siquiera forma parte del único error planteado.
Concluimos, por tanto, que el Ministerio Público presentó el mínimo de prueba legalmente admisible y necesario requerido por nuestro ordenamiento para establecer cada uno de los elementos del delito de motín y su conexión con el peticionario. En virtud de ello, determinamos que no erró el TPI al denegar la desestimación de autos. Empero, debemos enfatizar que en esta etapa de los procedimientos, la culpabilidad de un acusado es materia abierta hasta tanto se formalice el juicio plenario. Es allí donde entra en juego el estricto quántum de *1090 prueba que exige de cualquier determinación de culpabilidad que la misma sea más allá de toda duda razonable. Reiteramos que la determinación tomada en la vista preliminar, con la escasa prueba presentada, no tiene el efecto de prejuzgar el resultado del juicio plenario al cual deberá someterse el peticionario.
y
Por los fundamentos expuestos, se expide el auto de certiorari solicitado y se confirma la Resolución emitida y notificada el 10 de diciembre de 2002.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 60
1. Estos son, el Sr. Carlos I. Pesquera Morales, el Sr. Edwin Mundo Ríos y el Sr. Leonides Díaz Urbina. Este último, a su vez, ha presentado el recurso de certiorari núm. KLCE-2003-00116, también en consideración ante este panel.
2. Véase Moción bajo la Regla 64(p) de Procedimiento Criminal, Apéndice E del Peticionario, pág. 618.

3. Id.

4. El peticionario no acompañó copia de dichas fotos en el Apéndice del recurso.
5. El Procurador realiza el análisis de los alcances de nuestro Artículo 261 basado en la procedencia histórica del delito de motín tipificado en nuestro Código, cuyos orígenes se remontan al Artículo 404(a) del Código Penal de California y su jurisprudencia interpretativa.
6. El Anterior Artículo 359 rezaba: “Todo empleo de fuerza o violencia, que perturbare la tranquilidad pública, o amenaza de emplear tal fuerza o violencia, acompañada de la aptitud para realizarla en el acto, por parte de dos o mas individuos, obrando juntos y sin autoridad en ley, constituye un motín. ”
7. Dicho Artículo, desde el año 1872, dispone: “Any use of force or violence, disturbing the public peace, or any threat to use force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot. ”
8. El delito de tumulto se consumaba cuando “dos o más personas reunidas y actuando juntas intentaren o hicieren ademán de cometer un acto, que de realizarse, tendría el carácter de motín; constituyendo este último delito todo empleo de fuerza o de violencia que perturbe la tranquilidad pública o la amenaza de emplear tal fuerza o violencia, acompañada de la actitud para realizarla en el acto, por parte de dos o más personas, obrando juntas y sin autoridad de ley”. En Pueblo v. Alonso, et al., 19 D.P.R. 448 (1913), el acusado profirió palabras insultantes y amenazadoras contra el Alcalde de Utuado, e invitó a los allí presentes a que lo acometieran y mataran. El tribunal determinó que en esta clase de delitos [motín y tumulto] “no es necesario probar ningún acuerdo previo entre los acusados, siendo suficiente si dos o más personas están reunidas y aparece que actúan con el mismo propósito de perturbar la paz pública”. Id. a la pág. 450.
9. Véase Nevárez Muñiz, Dora, Código Penal de Puerto Rico Revisado y Comentado, Instituto para el Desarrollo del Derecho, Inc. Hato Rey, Puerto Rico (Ed. 2001), a la pág. 506.
10. Perkins & Boyce, Criminal Law, Tercera Edición, a la pág. 484. Foundation Press, New York (1983).
11. Id., a la pág. 483.
12. Nevárez Muñiz, Op. Cit., a la pág. 505.
*1091 13. En Pueblo v. Pacheco, supra, un policía fue agarrado por detrás por el acusado, mientras fue despojado de su macana y su revólver por unos huelguistas. La teoría del acusado fue que sólo había intervenido para ayudar al policía a poner fin a las actuaciones de los huelguistas, y que no participó de forma directa contra éste. El Tribunal Supremo, por opinión emitida por el Juez Asociado Sr. Wolf, declaró que: “Esto produjo un conflicto en la prueba que la corte estaba obligada a resolver, y no podemos decir en apelación que ella [la corte de instancia], no tenía derecho a creer fuera de duda razonable que el acusado tomó parte, coadyuvó e intervino en el supuesto motín. En reconsideración, el Juez Asociado Sr. Wolf la declaró sin lugar, y advirtió que las palabras “que perturbare la tranquilidad pública” significan una alteración a la paz y tranquilidad de un vecindario. Por lo tanto, el hecho de que el acusado le haya quitado las armas a un policía impidiendo así que éste cumpliese con su deber, constituía una alteración a la paz al funcionario. ”
14. Pueblo v. Ríos et al, supra, a la pág. 530.
15. Perkins & Boyce, Op Cit, a la pág. 483.
16. En cuanto al aparente requisito de asamblea ilícita, es pertinente comentar que “[a]n ocasional suggestion has intimated that one requisite of riot is that the original gathering of the wrongdoers must have been in the nature of an unlawful assembly, but this is a mistake. No doubt every riot includes an unlawful assembly, but it must be remembered that a gathering by accident or for an innocent purpose may suddenly be transformed into an unlawful assembly by a change of plan. ” Id., a la pág. 484.
17. Estimamos pertinente mencionar algunos casos del estado de California, Utah y Oklahoma que invoca el Procurador General en su escrito. En People v. Spear, 32 Cal. App. 2d 165, 89 P. 2d 445 (Cal., 1939), la Corte de Apelaciones de California afirmó en relación a un piquete relacionado a una huelga, que: “[i]t would seem clear that such a large body of men, even if not gathered for that purpose, would nevertheless have the effect of intimidation or coercion,\and to that extent, picketing in the instant case was a violation of the law”. La Corte Suprema de Utah señaló en State v. Woolman, 84 Utah 23, 33 P. 2d. 640 (Utah, 1934), que: “a riot may occur and the participants be a part of a lawful assembly without converting the assembly into an unlawful assembly. The occasion and all factors producing a riot may arise subsequent to the assembly.” (33 P. 2d. 640, 646). En Oklahoma se dijo, en Symonds v. State, 89 P. 2d. 970, 974, (Okla. 1939), que los participantes de una reunión legítima “should exercise these rights in a lawful manner, and not resort to riot”. Señaló, además, que “under the law, these rights should be secured in a lawful manner, and should not be by resort of taking the law into one's own hands. ”
18. Ello ha sido resuelto categóricamente a nivel apelativo por California en People v. Bundte, 87 Cal. App. 2d 735, 197 P.2d 823 (Cal. 1948), y en People v. Cipriani, 18 Cal. App. 3d 299, 95 Cal. Rptr. 722 (Cal. 1971). En Cipriani se dijo: “it is the concurrence of unlawful action by individuals in the use, or threat to unlawfully use force or violence that constitutes the offense of a riot. ” Además, luego afirma que: “All persons who encourage, incite, promote, give support to or countenance a riot are principals in a riot”. Id., a la pág. 724.
19. Dicho artículo reza: “Se consideran autores:

(a) Los que toman parte directa en la comisión del delito.

(b) Los que fuerzan, provocan, instigan, inducen o ayudan a otra persona a cometer el delito.

(c)Los que se valen de una persona inimputable para cometer el delito.

(d) Los que con posterioridad a la comisión del delito ayudaren a los que tomaron parte directa en la comisión del delito en cumplimiento de una promesa anterior a dicha ejecución.

(e) Los que cooperaren de cualquier modo en la comisión del delito.” (Enfasis nuestro)
20. En Oklahoma, con estatuto igual al nuestro, se ha resuelto, también a nivel apelativo, que toda persona se considera culpable de motín si ella “encourages, promotes, or takes part in riots, whether by words, signs or gestures... ”. Symonds v. State, 66 Okla.Crim. 49, 89 P. 2d 970, 974 (Okla. 1939). Dicho caso establece los dos requisitos para considerar la autoría del motín: (1) que la persona esté presente en el lugar de los hechos, y (2) que la persona promueva o aliente a los demás a *1092 continuar con el delito, ya bien sea mediante palabras, gestos, señales o cualquier acto similar. Id., a la pág. 974.
21. Apéndice K del Peticionario, págs. 692-693, Resolución recurrida, págs 13-14.
22. Apéndice C del Peticionario, a la pág. 362, Transcripción de Evidencia (TE), a la pág. 33.
23. Apéndice D del Peticionario.
24. Del testimonio del Sr. Roberto García, surge que el peticionario logró acceso a la primera planta del edificio, al vestíbulo de la Procuraduría:

“P ¿Cuántas personas usted reconoce que personas lograron acceso a la primera planta para poner la bandera?

R El Señor Pesquera, la señora Jennifer, estaba el Sr. Rivera Schatz, estaba... había bastante gente de ellos arriba; la prensa, obviamente tirando fotos, pero yo te podría decir que... y Leo Díaz estuvo arriba también, ya en el primer nivel... ”.

Apéndice C del Peticionario, a la pág. 365, Transcripción de Evidencia, TE, a la pág. 36.
Luego, más específicamente, el testimonio ubica al peticionario de la siguiente manera:

“P Perdóneme, don Roberto. Y en ese momento, y en ese momento es que ya usted los había dejado pasar para que pusieran la bandera.

R Correcto.

P Y usted nos dice, ¿luego de eso usted sigue viendo al Secretario del Partido Nuevo, usted lo identifica?

R ¿Luego de?

P Luego de que pasan...

R Le dije que me dediqué al compañero Dennis que estaba pillado en las escaleras.

P Bien. ¿Ydónde estaba Thomas Rivera, subiendo las escaleras?

RAla parte de atrás poniendo la bandera con el señor Pesquera.”

Apéndice C del Peticionario, a la pág. 483, TE, a la pág. 154.
25. En la vista preliminar desfilaron varios testimonios que establecieron la perturbación a la paz pública, entre ellos, los de Liza V. Torres, Ana E. Rodríguez Rodríguez, y el del Sr. Roberto García, quien hizo alusión específica al aquí peticionario en su testimonio. Al final de su testimonio directo, el Sr. García declaró que:
“R Salimos afuera, cogimos aire obviamente, allí fuimos a mirar el carro en la forma en que quedó el carro de la agencia. Pues, lá calle llegando de banderines, botellas plásticas de agua, latas de refrescos, vasos, obviamente como si.... como que allí hubo un evento y, pues, quedaron las piedras en el camino. Luego entramos, nos reunimos, estuvimos consolándonos unos a otros, tratando de conseguir aire, paz, tranquilidad y bajamos todos y estuvimos afuera y entonces ahí cada uno se fue para su casa.” (Enfasis nuestro). Apéndice C del Apelante, a la pág. 368, Transcripción de Evidencia, TE, a la pág. 39.
26. Véase Recurso de Certiorari, a la pág. 10. Entre ellos, invoca a nivel federal el Anti-Riot Act, 18 USC §2101.
27. En cuanto a la insuficiencia de la mera presencia, el peticionario cita a Pueblo v. Aponte González, 83 D.P.R. 511, 519 (1961). Dicho caso es sobre posesión constructiva, por lo que no aplica al caso de autos. En cuanto al requisito de asamblea ilícita, el peticionario afirma que: “In order to create a riot, the persons assembled must posses a common intent to mutually assist each other to do an unlawful act. Thus, it must be shown that the rioters were involved in a common disorder, it is not *1093 enough to show that numerous individuals were engaged in similar unrelated activities, or that bystanders or spectators gathered around a fight. 53A Am. Jur. 2d., págs. 621-622 (1983)”. Recurso de Certiorari a la pág. 10.
28. Véase párrafo 35 del Recurso de Certiorari, a la pág. 5.
29. Pueblo v. Rexach Benítez, supra, Opinión Concurrente, a la pág. 326, nota 2.